# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

KENT S. GREENAWALT, an individual,

  Plaintiff,

   v.

NANCY J. MACK, an individual,

  Defendant.

Case No. 7:10cv00106

## MOTION FOR JUDGMENT ON THE PLEADINGS
## PURSUANT TO FED. R. CIV. P. 12(c)

  Plaintiff Kent Greenawalt hereby moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings as to all counts in his complaint for declaratory judgment. Each of the claims addressed in Mr. Greenawalt's complaint for declaratory judgment was previously asserted by Nancy Mack against Mr. Greenawalt in the United States District Court for the Western District of Washington. The District Court in Washington dismissed Ms. Mack's claims for lack of personal jurisdiction. Mr. Greenawalt now seeks to resolve these claims through this declaratory judgment action in the proper jurisdiction and venue, Roanoke, Virginia.

  Ms. Mack has filed an answer, so the pleadings are closed. Even accepting as true *arguendo* Ms. Mack's allegations, it is clear as a matter of law that none of Ms. Mack's claims is legally cognizable. Thus, judgment on the pleadings is appropriate pursuant to Rule 12(c).

## I.  INTRODUCTION

  Ms. Mack has asserted a panoply of tort and implied-contract claims against Mr. Greenawalt that allegedly arise from their eight-year, non-marital cohabitation in Roanoke,

Virginia, and the termination of that relationship in March 2009.[1]  Ms. Mack's core allegation

is that she is entitled to a share of the assets that Mr. Greenawalt earned or acquired from June

2001 through March 20, 2009 – despite the fact that she and Mr. Greenawalt never married –

under a "meretricious relationship" theory of recovery that would simulate the benefits that

accrue to a married spouse.  Ms. Mack also alleges that Mr. Greenawalt breached his promise

"to continue to take care of [her] forever," and that Mr. Greenawalt inflicted emotional distress

on her by abruptly ending the relationship.  In short, Ms. Mack attempts to manufacture civil

liability to address the ending of a long-term romantic relationship that never reached the legal

status of marriage under governing Virginia law.

Ms. Mack's core claim fails as a matter of law because Virginia does not recognize

equitable property rights for non-married individuals.  Such equitable rights are explicitly

prohibited by Article I, Section 15-A of the Virginia Constitution.

Ms. Mack's various peripheral claims also fail as a matter of law because she does not

allege facts that would support a cognizable claim under contract or tort for grievances arising

from the termination of a romantic relationship.  For example, Ms. Mack's fraudulent

inducement claim is futile because it is prohibited under Virginia's statute abolishing actions

for breach of the promise to marry.  Ms. Mack's claims for breach of contract and breach of

partnership contract are groundless because abstract promises to "take care of you forever" are

unenforceable and violate the statute of frauds.  Ms. Mack's claims that Mr. Greenawalt

intentionally or negligently inflicted emotional distress on her similarly fail as a matter of law

---

[1]  Ms. Mack originally filed suit against Mr. Greenawalt in Washington state court in Seattle on October 14, 2009.
Mr. Greenawalt removed the case to the United States District Court for the Western District of Washington on
December 2, 2009, and the Honorable John C. Coughenour dismissed Ms. Mack's complaint for lack of personal
jurisdiction on March 9, 2010.  Mr. Greenawalt then filed his complaint for declaratory judgment in the Western
District of Virginia to resolve Ms. Mack's claims in the proper jurisdiction.  Ms. Mack subsequently filed a notice
of appeal of Judge Coughenour's dismissal order on April 1, 2010 in the Ninth Circuit.

because Ms. Mack does not allege (and cannot show) that Mr. Greenawalt's conduct was "outrageous" or that she suffered "severe injury." Ms. Mack's final peripheral claim, for promissory estoppel, is not recognized as a cause of action in Virginia.

There is simply no basis for a court to intervene in the personal relationship between Ms. Mack and Mr. Greenawalt. *See Martin v. Elliotte,* 47 Va. Cir. 59, 1998 WL 972222, at *8 (June 5, 1998) ("This lawsuit cannot mend a broken heart..."). Mr. Greenawalt and Ms. Mack never married, never jointly purchased or owned any property, and never signed any contract allocating their separate property. Yet by asserting her baseless claims (in the wrong court) against Mr. Greenawalt, Ms. Mack has put a cloud over Mr. Greenawalt. Mr. Greenawalt appropriately filed this declaratory judgment action to remove that cloud.

Now that the pleadings have been closed upon the filing of Ms. Mack's answer to Mr. Greenawalt's declaratory judgment complaint, it is evident that none of Ms. Mack's claims has a legal basis. Under the circumstances, judgment on the pleadings is the appropriate avenue to put an end to the baseless claims that Ms. Mack has asserted, and to end Ms. Mack's efforts to find a nonexistent judicial remedy for her broken heart.

## II.    STATEMENT OF FACTS[2]

### A.    The Parties' Non-Marital Relationship.

Mr. Greenawalt is a resident and citizen of Roanoke, Virginia and has resided in Roanoke for twenty-one years. Complaint in this declaratory judgment action (the "Complaint") ¶ 8; Answer in this declaratory judgment action (the "Answer") ¶ 2. Mr.

---

[2] For the purposes of this motion for judgment on the pleadings, the allegations in Ms. Mack's October 14, 2009 complaint against Mr. Greenawalt in the Superior Court of the State of Washington in and for King County, Case No. 09-2-37286-1 KNT ("Mack Complaint") and the allegations in Ms. Mack's Answer are taken as true. Mr. Greenawalt does not admit any of Ms. Mack's allegations other than for purposes of this motion, and the recitation of such allegations herein is made solely for the purpose of challenging the legal sufficiency of Ms. Mack's claims.

Greenawalt is the President of Foot Leveler's, Inc., a custom orthotics manufacturing company located in Roanoke. *Id.*

Ms. Mack is today a resident and citizen of King County, Washington. Complaint ¶ 9; Answer ¶ 2. At the time her relationship with Mr. Greenawalt ended, Ms. Mack was registered to vote in Virginia as a resident and citizen of Virginia. Exhibit A attached hereto (Order at 5:3-4, in *Mack v. Greenawalt,* Case No. C09-1711-JCC (W.D. Wash. March 9, 2010) (Coughenour, J.)).

On or about February 15, 2001, Mr. Greenawalt proposed marriage to Ms. Mack. Complaint ¶ 13; Answer ¶ 2. In or about June 2001, Mr. Greenawalt and Ms. Mack began residing together at Mr. Greenawalt's home in Roanoke, Virginia. Complaint ¶ 14; Answer ¶ 14. Ms. Mack did not – and does not – own any portion of the Roanoke residence. Complaint ¶ 16; Answer ¶ 5.

The parties engaged in an eight-year, non-marital cohabitation. Complaint ¶ 5; Answer ¶ 1. On or about March 20, 2009, Mr. Greenawalt ended his non-marital romantic relationship with Ms. Mack. Complaint ¶ 20; Answer ¶ 5.

Mr. Greenawalt and Ms. Mack never married. Complaint ¶ 17; Answer ¶ 5.

**B.      Procedural History.**

On October 14, 2009, Ms. Mack filed the Mack Complaint. The Mack Complaint alleged seven causes of action: (1) fraudulent or reckless inducement; (2) breach of contract; (3) breach of partnership contract; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) equitable distribution of property pursuant to dissolution of a "meretricious" or "committed intimate" relationship; and (7) promissory estoppel. Complaint ¶ 1; Answer ¶ 1.

4

On December 2, 2009, Mr. Greenawalt filed a Notice of Removal, thereby removing the Washington state court case filed by Ms. Mack to the United States District Court for the Western District of Washington at Seattle, Case No. 09 CV-1711-JCC. Complaint ¶ 2; Answer ¶ 1.

On December 9, 2009, Mr. Greenawalt filed a Motion to Dismiss for Lack of Personal Jurisdiction in the United States District Court for the Western District of Washington. Defendant Mack filed an opposition brief to Mr. Greenawalt's motion to dismiss. Complaint ¶ 3; Answer ¶ 1.

After reviewing the filings of the parties, on March 9, 2010, United States District Court Judge John C. Coughenour dismissed the Mack Complaint in the Western District of Washington for lack of personal jurisdiction over Mr. Greenawalt. Complaint ¶ 4; Answer ¶ 1.

Mr. Greenawalt filed his Complaint for declaratory judgment in this case on March 10, 2010. Dkt. No. 1.

### III.    AUTHORITY AND ARGUMENT

**A.    Legal Standard for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c).**

Mr. Greenawalt brings his motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which provides a mechanism to resolve litigation where the pleadings demonstrate that a party cannot support its claims as a matter of law. A Rule 12(c) motion may be made by any party after the close of pleadings – *i.e.*, after an answer is filed by defendant. *See Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Because this is a declaratory judgment action seeking to resolve allegations that Ms. Mack previously asserted in a complaint against Mr. Greenawalt, procedurally the present motion is akin to a Rule 12(b)(6)

motion to dismiss the claims asserted in Ms. Mack's prior complaint. The technical distinction between Rule 12(c) and Rule 12(b)(6) is irrelevant, however, because the same standard applies to both motions. *See* 2 Moore's Federal Practice § 1238 (3d ed.); *see also Bruce v. Riddle*, 631 F.2d 272, 273-74 (4th Cir. 1980) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)).

In resolving the motion to dismiss, the Court must "accept as true the facts as alleged in the [non-moving party's pleading]," and view those facts in favor of the nonmoving party. *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997); *see also Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 217-18 (4th Cir. 1994) (court will "construe factual allegations in the nonmoving party's favor"). However, the Court "is not so bound with respect to the [non-moving party's] legal conclusions." *Id.*; *see also Edwards*, 178 F.3d at 244 (court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint"). A Rule 12(c) motion for judgment on the pleadings is appropriate when all material allegations of fact in the non-moving party's pleading are admitted for purposes of the motion, and only questions of law remain. *Republic Ins. Co. v. Culbertson*, 717 F. Supp. 415, 418 (E.D. Va. 1989).

**B.      Ms. Mack's Meretricious Relationship Claim – Count Six of Her Complaint – is Barred By the Virginia Constitution and Virginia Law.**

**1.      Virginia Law Applies to Ms. Mack's Contract and Quasi-Contract Claims.**

Mr. Greenawalt and Ms. Mack cohabitated together for approximately eight years in a romantic relationship in Roanoke, Virginia. The parties agree, as alleged in the Mack Complaint, that beginning in June 2001 Ms. Mack "began to live with [Mr.] Greenawalt in Roanoke, Virginia continuously for approximately eight years," and that they both lived at "this

6

residence in Roanoke, Virginia … for all of the eight years." Mack Complaint ¶¶ 1.7, 3.38. The dispute is not whether the parties cohabitated together. Rather, the dispute is whether Virginia law allows non-marital cohabiters to obtain the same legal rights and benefits as a married couple.

Virginia law applies to Ms. Mack's contract and quasi-contract claims – for meretricious relationship, breach of contract, breach of partnership contract, and promissory estoppel – because, to the extent any contract arose in the current case, it arose exclusively in Virginia *as a result of the cohabitation and long-term committed relationship*, which are the "acts" that create such a "contract."[3] Under Virginia choice of law principles, questions concerning the validity, interpretation, and construction of a contract are governed by the substantive law of the place of contract – *i.e.*, where the act is done that is necessary to make the contract binding. *See Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287 (4th Cir. 1987); *KECO Indus., Inc. v. ACF Indus., Inc.*, 316 F.2d 513, 514 (4th Cir .1963) ("[T]he place of contracting is the place where the last act necessary to complete the contract and give it validity was performed....").

In the present case, in order to state a claim for a meretricious relationship "contract," Ms. Mack must plead and prove that she cohabitated and shared a committed personal relationship with Mr. Greenawalt. *See, e.g., Wallender v. Wallender*, 126 Or. App. 614, 617, 870 P.2d 232 (Or. Ct. App. 1994) ("To determine whether property acquired during a period of

---

[3] In states where claims for equitable distribution of property from a non-marital, meretricious relationship are recognized, such claims arise under the law of contract and implied contract. *See, e.g., Marvin v. Marvin*, 18 Cal.3d 660, 557 P.2d 106 (1976) ("The courts may inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract or implied agreement of partnership or joint venture, or some other tacit understanding between the parties."); *Peffley-Warner v. Bowen*, 113 Wn.2d 243, 253, 778 P.2d 1022 (1989) ("The division of property following termination of an unmarried cohabitating relationship is based on equity, contract and trust...").

cohabitation should be considered joint property and thereby be equitably divided, ... [f]actors that we ... have considered relevant to the issue include how the parties held themselves out to their community, the nature of the cohabitation, joint acts of a financial nature, if any, how title to the property was held, and the respective financial and nonfinancial contributions of each party."); *see also, e.g., Connell v. Francisco*, 121 Wn.2d 339, 346, 898 P.2d 831 (Wash. 1995) ("A meretricious relationship is a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist."). As necessary elements of a meretricious relationship "contract," cohabitation and a long-term committed relationship were the "last acts necessary to complete the contract" and thus determine the choice of law that will govern the relationship. Here, Ms. Mack acknowledges that she "agreed to cohabitate with [Mr.] Greenawalt in Roanoke, Virginia," and that she did cohabitate with Mr. Greenawalt in Virginia for eight years. Mack Complaint ¶¶ 3.3, 3.38. Therefore, to determine whether a valid contract ever existed between the parties, Virginia law must govern the Court's analysis.

Virginia law also applies because it is the place where the parties intended to perform their alleged agreement. "In cases in which a contract is made in one state, but is to be performed in another, the law of the place of performance governs." *Sneed v. American Bank Stationary Company*, 764 F. Supp. 65, 68 (W.D.Va. 1991). In *Sneed*, the defendant made a job offer in California to a California resident who accepted the offer, but the performance of the contract – the employment – was to take place in Virginia. The Court held that Virginia law, not California law, applied. *Id.* Here, Ms. Mack admits that the parties agreed to perform the "contract" – to live together in a romantic relationship – in Virginia, where she moved to live with Mr. Greenawalt. *See* Mack Complaint ¶ 3.13 ("[T]he parties entered into a verbal and/or implied contract ... [where] [Ms. Mack] would ... cohabitate with [Mr. Greenawalt] at the

8

Roanoke home."). Because the parties intended to perform the alleged agreement in Virginia, Virginia law applies.

Virginia law must also apply because it would be contrary to Virginia public policy for a court to enforce a contract or quasi-contract based on a "meretricious relationship." *Willard v. Aetna Cas. & Sur. Co.*, 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973) ("Comity does not require application of another state's substantive law if it is contrary to the public policy of the forum state."). As explained further below, the Virginia Constitution prohibits unmarried couples from obtaining legal benefits that approximate marriage. VA. CONST., art. I, § 15-A. This clear expression of Virginia public policy is also articulated in an *amicus curiae* brief filed by the Attorney General of Virginia in the 1999 case of *Arlington County v. White*. In the *amicus* brief, the Attorney General – on behalf of the Commonwealth of Virginia – took the position that it would be contrary to Virginia public policy for a Virginia county to recognize non-marital domestic partnerships. Brief Amicus Curiae of the Commonwealth of Virginia in Support of the Appellees, 1999 WL 33999415, at *7 (1999), attached hereto as Exhibit B ("Domestic partnerships are a category of domestic relationship wholly unrecognized by Virginia law. By conferring government recognition and benefits on such arrangements, Arlington County violates the public policy of the Commonwealth."). The Attorney General noted that domestic partnership – whether between individuals of the opposite sex or same-sex partners – violates Virginia public policy requiring that marriages be formal (*see* Va. Code Ann. § 20-13) and that marriages "cannot be dissolved unilaterally, or immediately even by mutual consent." *Id.* at *9-10.

## 2.      Virginia Law Prohibits Equitable Distribution of Property Based on a Claim of a Meretricious Relationship.

Ms. Mack's central allegation is that, because she cohabitated with Mr. Greenawalt for eight years in a "committed intimate relationship," she is entitled to "one half of all assets" acquired by Mr. Greenawalt during the course of the relationship, as if she had been married to Mr. Greenawalt.  Mack Complaint ¶¶ 3.37, 3.44.  "By analogy to marital dissolution," Ms. Mack seeks a judicial finding that approximates her non-marital cohabitation to a formal, legal marriage and then equates the end of that cohabitation to a divorce. *Id.,* ¶ 3.43.

The Virginia Constitution prohibits unmarried individuals from obtaining a legal status that approximates the qualities of marriage.  Article I, Section 15-A of the Constitution provides:

> This Commonwealth and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effects of marriage.  Nor shall this Commonwealth or its political subdivisions create or recognize another union, partnership, or other legal status to which is assigned the rights, benefits, obligations, qualities, or effects of marriage.

This constitutional provision effectively "denies legal status to any couples involved in long-term non-marital cohabitation."  Scott, A., *Estop in the Name of Love: A Case for Constructive Marriage in Virginia*, 49 Wm. & Mary L. Rev. 973, 974 (2007).  Moreover, "[t]he legal remedies that are available to divorcing couples are unavailable to unmarried cohabiters who separate....   [An] unmarried cohabitating couple – even if involved in a long-term cohabitation relationship analogous to marriage with children and jointly held property – would be entitled to no legal remedies upon the dissolution of their union." *Id.* at 988 (citing *Reynolds v. Reynolds*, 62 Va. Cir. 114, 122 (2003) (holding that couple that cohabitated, filed joint tax returns, and held themselves out as married in Virginia for 11 years were not legally married

and thus were not entitled to an equitable distribution of property)).

In the present case, the "meretricious relationship" alleged by Ms. Mack is nothing more than an attempt to effect an end-run around the Virginia Constitution by recognizing a relationship that would "approximate the design, qualities, significance, or effects of marriage." VA. CONST., art. I, § 15-A. In fact, Ms. Mack's purported cohabitation "agreement" with Mr. Greenawalt is nothing more than an idealized description of the benefits and responsibilities of marriage:

- "[Ms. Mack] would build and maintain a homelike and socially supportive environment for Mr. Greenawalt in Roanoke";

- "[Ms. Mack] would manage and decorate any homes in consultation with [Mr. Greenawalt]";

- "[Ms. Mack] would … support [Mr. Greenawalt] in all executive, professional, promotional and employment matters of [his] company";

- "[Ms. Mack] would support [Mr. Greenawalt] with respect to all matters related to his side of the family, including his father and daughters, and [Ms. Mack] would host [Mr. Greenawalt's] daughters from a previous marriage on a regular basis and serve as a supervisory adult as well as a supportive 'step-mom'";

- "[Mr. Greenawalt] would share his life, including his material assets, forever and he would always take care of [Ms. Mack]";

- "[Mr. Greenawalt] agreed to support [Ms. Mack] in matters related to her family";

- "The parties would forever be part of the same 'team' and no one would ever come between them."

Mack Complaint ¶¶ 3.14-15. Ms. Mack's complaint explicitly acknowledges the "analogy to marriage" that is the basis for her claims, and she requests damages "by analogy to marital dissolution." Mack Complaint ¶¶ 1.9, 3.43.

Based on the plain language of Ms. Mack's own pleadings, it is clear that she is seeking

to have the Court recognize her relationship with Mr. Greenawalt as akin to marriage, and the dissolution of that relationship as identical to a divorce. Virginia law forbids such a result. VA. CONST., art. I, § 15-A; *Reynolds,* 62 Va. Cir. at 122. Declaratory judgment in favor of Mr. Greenawalt should be granted on the core meretricious relationship claim.

Moreover, the remainder of Ms. Mack's allegations are peripheral to – and are essentially lesser alternatives to – this core claim. For example, likely because she knows that she cannot establish her core meretricious relationship claim, Ms. Mack offers the alternative that she had an "implied contract" with Mr. Greenawalt that simulated the qualities and effects of marriage. And, in the event that her "implied contract" claim fails, Ms. Mack falls back to an alternative basis for recovery pursuant to the disfavored equitable principle of "promissory estoppel." Ms. Mack's shotgun approach to pleading falls short, however, because at each juncture she asks the Court to do something that is prohibited by governing Virginia law – to treat a non-marital relationship like a marriage.

Because Ms. Mack's peripheral claims are nothing more than thinly-veiled attempts by Ms. Mack to obtain legal benefits associated with marriage, judgment on the pleadings on the peripheral claims should also be granted in favor of Mr. Greenawalt. As explained below, each of Ms. Mack's peripheral claims *also* suffers from additional fatal flaws particular to these individual claims. But those defects are, although fatal to Ms. Mack's peripheral claims, subsidiary obstacles to her claims, in light of Virginia's public policy enshrined in its Constitution, to prohibit legal rights arising from non-marital intimate relationships.

C.    **Ms. Mack's Breach of Contract Claims – Counts Two and Three of Her Complaint – Fail Because The Alleged Promises Are Not Legally Enforceable.**

"The elements of a breach of contract action are (1) a legally enforceable obligation of a

12

defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury

or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC*,

277 Va. 148, 154, 671 S.E.2d 132 (2009). Ms. Mack's claims for breach of contract fail

because she cannot allege facts sufficient to establish the threshold element, *i.e.,* that any

legally enforceable obligation exists.

In Counts Two and Three of her complaint, Ms. Mack alleges that the "parties entered

into a verbal and/or implied contract" that governed the terms of their eight-year cohabitation

and that created a long-term "partnership [that] was both financial and emotional." Mack

Complaint ¶¶ 3.13, 3.23. Ms. Mack does not allege that these purported contracts were ever

written or signed by Mr. Greenawalt.

The contracts alleged by Ms. Mack, if they existed, would be unenforceable as a matter

of law because the terms of the purported contracts were not established with reasonable

certainty. The Virginia Supreme Court has held that the terms of a contract must be clear,

definite, and explicit, else the contract is invalid:

> In order to be binding, an agreement must be definite and certain as to its
> terms and requirements; it must identify the subject matter and spell out
> the essential commitments and agreements with respect thereto. The
> terms of the contract must be clear, definite, and explicit. A contract must
> be sufficiently definite to enable a court to give the contract an exact
> meaning, and the contract must obligate the contracting parties to matters
> that are definitely ascertained or ascertainable. *A contract is not valid and
> it is unenforceable if the terms of the contract are not established with
> reasonable certainty.*

*Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 5-6, 661 S.E.2d 801

(2008) (citations and quotation omitted) (emphasis added).

In the present case, the implied contracts alleged by Ms. Mack lack the requisite terms

that would allow a court to give "exact meaning" to either alleged contract. Indeed, the alleged

terms of the contracts as stated by Ms. Mack are so non-specific as to make it evident that Mr. Greenawalt's statements were merely expressions of affection, not contract terms. Ms. Mack alleges that Mr. Greenawalt agreed:

- "[H]e would always take care of [Ms. Mack] in the manner and style of which he had demonstrated to her and her family";

- "The parties would forever be part of the same 'team' and … no one would every [sic] come between them"; and

- "[Ms. Mack] would be part of [Mr. Greenawalt's] personal and professional life forever."

Mack Complaint¶ 3.15. These supposed "contract terms" provide absolutely no basis for a court to determine the parties' relative rights and responsibilities. Nor are these "terms" sufficiently specific to demonstrate that there was an actual meeting of the minds between the parties, since each party could have vastly different understandings of such vague terms. *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75, 661 S.E.2d 404 (2008) ("Perhaps most importantly, mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts. Until the parties have a distinct intention common to both there is a lack of mutual assent and, therefore, no contract.") (citations and quotations omitted).

The Statute of Frauds also bars Ms. Mack's claims for breach of contract and renders the alleged contract unenforceable. Ms. Mack's contract claims circle around the notion that Mr. Greenawalt should have married her, in accordance with his oral "promise," rather than ending the relationship, but a section of Virginia's Statute of Frauds bars enforcement of an oral "agreement made upon consideration of marriage." Va. Code Ann. § 11-2(5) (2010).

Finally, we remind the Court that the implied contract claims alleged by Ms. Mack run squarely into the Virginia constitutional provision that denies the legal benefits of marriage to

14

unmarried couples. The Virginia Constitution prohibits unmarried individuals from obtaining a legal status that approximates the qualities of marriage. VA. CONST., art. I, § 15-A. The "implied contract" alleged by Ms. Mack plainly would approximate the qualities and effects of marriage. Mack Complaint ¶ 3.14-15. Virginia law prohibits such contracts.

**D.** **Ms. Mack's Fraudulent or Reckless Inducement Claim – Count One of Her Complaint – is Barred by the Virginia Heart Balm Statute and Because Ms. Mack Cannot Establish Reasonable Reliance on Mr. Greenawalt's Alleged Representations.**

"For torts, under Virginia's choice of law rules, claims are analyzed under the law governing the place of the alleged wrong." *Consulting Eng'r Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 n.6 (4th Cir. 2009). "The place of alleged wrong is the place where the last event necessary to make an act liable for an alleged tort takes place." *Id.* (citation and quotation omitted). Ms. Mack alleges that Mr. Greenawalt made fraudulent representations "over the course of [the parties'] relationship." Mack Complaint ¶ 3.7. Because the parties' relationship was centered in Virginia for the eight years during which the parties cohabitated, Virginia law must apply to these alleged "repeated representations made over the course of [the] relationship." *Id.* at ¶ 3.9.[4]

Under Virginia law, a proposal for marriage cannot be the basis for a civil action. Virginia Code Section 8.01-220, known as the "Heart Balm Statute," provides:

> Notwithstanding any other provision of law to the contrary, no civil action shall lie or be maintained in this Commonwealth for alienation of affection, breach of promise to marry, or criminal conversation upon which a cause of action arose or occurred on or after June 28, 1968.

The Heart Balm Statute prohibits not only actions for breach of contract related to a marriage

---

[4] Although Ms. Mack alleges that the initial promise to marry occurred in Washington, the last *acts* she alleges that give rise to liability occurred in Virginia, including "the repeated representations made over the course of their relationship." Mack Complaint ¶¶ 3.7, 3.9.

proposal, but also for alleged fraudulent inducement in a promise to marry. *Pierce v. Anderson*, 63 Va. Cir. 207, 2003 WL 22779072 at *3 (2003) ("The Heart Balm Statute will not allow a civil action to lie based on fraudulent promises to marry."). In light of this controlling law, Ms. Mack cannot sustain a fraudulent inducement claim against Mr. Greenawalt based on his alleged representations that he would "marry her and that he would continue to care for her for the rest of her life." Mack Complaint ¶ 3.2.

Furthermore, in order to state a claim for fraudulent inducement, Ms. Mack must show that she **reasonably** relied on Mr. Greenawalt's representations. *Sneed,* 764 F. Supp. at 68 ("[I]n order to recover for fraud, plaintiff's reliance upon the defendant's representation must have been reasonable."). Where the underlying representations are unenforceable as a matter of law, there can be no reasonable reliance. *Id.* (citing *White v. Int'l Tel. & Tel. Corp.*, 718 F.2d 994 (11th Cir. 1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984); *Philips v. Goodyear Tire & Rubber Co.*, 651 F.2d 1051 (5th Cir. 1981); *Jacobs v. Georgia-Pacific Corp.*, 172 Ga. App. 319, 323 S.E.2d 238 (Ga. Ct. App. 1984); *Ely v. Stratoflex, Inc.*, 132 Ga. App. 569, 208 S.E.2d 583 (Ga. Ct. App. 1974); *Longnecker v. Ore Sorters (N.A.), Inc.*, 634 F. Supp. 1077, 1082 (N.D. Ga. 1986) ("[W]here a promise is legally unenforceable ... a plaintiff is unable, *as a matter of law*, to establish that his reliance was reasonable.") (emphasis added) (citations omitted)).

In *Sneed*, the plaintiff alleged that he was fraudulently induced to move to Virginia from California based on the promise of a job in Virginia that was later rescinded. *Sneed*, 764 F. Supp. at 68. The underlying employment contract, however, was terminable at will and thus unenforceable. *Id.* The Court held that there could be no reasonable reliance on an unenforceable contract and dismissed the plaintiff's fraud claim. *Id.*

16

The reasoning of *Sneed* applies with equal force to the present case. Ms. Mack alleges that Mr. Greenawalt represented prior to June 2001 that "he was in love with [Ms. Mack], that he wanted to marry her, ... that he would continue to care for her for the rest of her life," and that based on these representations she agreed to move to Virginia in 2001. Mack Complaint ¶¶ 3.2-3.3. Just as in *Sneed,* the alleged representations that purportedly caused Ms. Mack to move to Virginia were unenforceable. Even assuming that Ms. Mack's allegations are true for purposes of Rule 12(c),[5] she could not have reasonably relied on Mr. Greenawalt's promise of marriage because, as noted above, Virginia's Heart Balm Statute explicitly deems promises of marriage to be unenforceable. Va. Code Ann. § 8.01-220.[6]

The purportedly fraudulent representations alleged by Ms. Mack are also unenforceable as a matter of black-letter contract law. As explained above in greater detail, the alleged representations are unenforceable because:

(1) A promise to love and care for someone "forever" is by its nature vague and ambiguous, and "[a] contract is not valid and it is unenforceable if the terms of the contract are

---

[5] Some of Ms. Mack's allegations stretch the bounds of credibility. For example, Ms. Mack claims – without any factual support – that Mr. Greenawalt proposed marriage and professed his love for Ms. Mack in 2001 with the intent to mislead her about his plan to break up with her eight years later. Mack Complaint ¶ 3.9 ("The representations made by [Mr.] Greenawalt [since 2001] ... were either false or reckless when made."). Ms. Mack's suggestion that Mr. Greenawalt acted with fraudulent intent at the beginning of an eight-year relationship (*i.e.*, that Mr. Greenawalt intended, from the *first day* of the eight-year relationship, to end the relationship) is cynical, defies logic, and tests the boundaries of justifiable pleading under Fed. R. Civ. P. 11. The Court should ignore this unsupportable claim, and dismiss the fraud allegation as nothing more than a veiled claim for breach of contract. *See City of Richmond v. Madison Management Group*, 918 F.2d 438, 447 (4th Cir. 1990) (dismissing plaintiff's fraud claim as nothing more than an "attempt to dress up a contract claim in a fraud set of clothes.").

[6] To the extent that Ms. Mack is alleging that provisions in Mr. Greenawalt's estate plan constituted fraudulent representations, such allegations cannot support a claim for fraudulent inducement because reliance on a revocable will is *per se* unreasonable, and because testamentary gifts in wills do not constitute enforceable promises. *Salley v. Burns*, 220 Va. 123, 131, 255 S.E.2d 512 (Va. 1979) ("Generally speaking, wills are in their nature ambulatory or revocable, and cannot be made otherwise, even by the most express terms.... [T]he fundamental reason for this rule is that every purely testamentary disposition of property is in the nature of a gift."). In fact, Ms. Mack alleges in her complaint that she was aware that Mr. Greenawalt changed his will on at least two occasions, so she had actual notice that the will could be altered at Mr. Greenawalt's discretion and did not constitute an enforceable contract. Mack Complaint ¶¶ 3.4-3.6.

not established with reasonable certainty." *Dodge*, 276 Va. at 5-6.

(2) The Virginia Constitution denies unmarried individuals the legal benefits of marriage, and unmarried individuals cannot avoid this constitutional mandate by resort to an "implied contract." VA. CONST., art. I, § 15-A.

Ms. Mack's allegations of fraud also fail to meet the specific pleading requirements of Fed. R. Civ. P. 9(b). Under Rule 9(b), Ms. Mack "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quotation and citation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quotation and citation omitted). "The particularity requirement is (1) to provide defendants with fair notice of plaintiff's claim; (2) to protect defendants from harm to their reputation or good will; and (3) to reduce the number of nuisance or 'strike' suits." *Weill v. Dominion Resources, Inc.*, 875 F. Supp. 331, 338 (E.D. Va. 1994). Moreover, generalized allegations regarding misrepresentations or omissions purportedly made over the course of time are plainly deficient. *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996) (broad assertions of time and place insufficient).

Here, Ms. Mack's fraudulent inducement claim is not pleaded with particularity. Ms. Mack alleges non-specific representations over a broad period of eight years:

- "[O]n *several* occasions prior to June 2001, [Mr.] Greenawalt represented to [Ms. Mack] and to her parents that he was in love with [Ms. Mack], that he wanted to marry her..." Mack Complaint ¶ 3.2 (emphasis added).

- "[Mr. Greenawalt] *continuously* made such representations from *February 15, 2001 through February 2009.*" *Id.* (emphasis added).

- "[Ms. Mack relied on] the *continuous* representations and actions of [Mr.] Greenawalt over the course of their relationship." Mack Complaint ¶ 3.7 (emphasis added).

The above allegations lack sufficient particularity because they do not delineate what precise representations were made, where and when they were made, or how they were made. These allegations also concern representations made over the course of a broad swath of time. Ms. Mack's fraud claims do not satisfy Rule 9(b).

In short, Ms. Mack cannot manufacture a case of legal liability based on Mr. Greenawalt's alleged lovestruck promises to marry her and take care of her "forever," particularly in the absence of any written agreement, any specific allegations, or any alleged evidence to lend credence to these baseless allegations.

**E.     Ms. Mack's Claims for Intentional and Negligent Infliction of Emotional Distress – Counts Four and Five of Her Complaint – Cannot Be Sustained Because She Has Not Alleged that Mr. Greenawalt Engaged in Outrageous Conduct or that Her Distress Was Severe.**

In Virginia, a claim of intentional infliction of emotional distress is a "tort of last resort." *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (Va. 1991).[7] A plaintiff who seeks to recover damages for intentional infliction of emotional distress must show that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and

---

[7] Virginia law applies to the emotional distress tort claims because Virginia is the "place where the last event necessary to make an act liable for an alleged tort" occurred. *Consulting Eng'r.*, 561 F.3d at 280 n.6. Although Ms. Mack alleges that the *announcement* of the breakup of the relationship occurred in Nevada, the last *acts* she alleges that give rise to liability occurred in Virginia: "demanding that [Ms. Mack] immediately move out of their Roanoke residence"; "cutting off the professional, social, and family ties that they had shared for more than ten years [which ties were obviously principally in Virginia]"; and texting Ms. Mack at the Roanoke residence that she was "like an employee." Mack Complaint ¶¶ 3.27, 3.31. These acts that allegedly give rise to liability all occurred in Virginia. In any event, the elements to state a claim for intentional/negligent infliction of emotional distress are for all practical purposes the same under Virginia and Nevada law. *Compare Russo*, 241 Va. at 26, *with Jordan v. State ex rel. Dept. of Motor Vehicles and Pub. Safety*, 121 Nev. 44, 75, 110 P.3d 30 (Nev. 2005), (*overruled on other grounds by Buzz Stew, LLC v. City of North Las Vegas*, 181 P.3d 670, 672 n.6 (Nev. 2008)). Both Virginia and Nevada require a plaintiff to plead outrageous conduct and severe injury, which Ms. Mack has not sufficiently asserted here.

intolerable; (3) the alleged conduct and emotional distress were causally connected; and (4) the distress was severe. *Id.* Ms. Mack has not alleged facts sufficient to plead the second and fourth of these elements.

Virginia law establishes a high threshold for what constitutes outrageous and intolerable conduct. It is insufficient to show tortious or even criminal conduct; liability attaches only for conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241 Va. at 27. Whether conduct may reasonably be regarded as sufficiently extreme and outrageous is an issue of law for the court to decide. *See Owens v. Ashland Oil, Inc.*, 708 F. Supp. 757, 760 (W.D. Va. 1989).

Ms. Mack fails to allege that Mr. Greenawalt's conduct was so outrageous in character, and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Russo*, 241 Va. at 27. Ms. Mack alleges that Mr. Greenawalt "coldly and abruptly terminated the relationship on March 20, 2009, giving Plaintiff 48 hours to pack her belongings and cutting off the credit cards and bank account they had shared." Mack Complaint ¶ 2.11. Although the termination of a romantic relationship, moving out of a boyfriend's home, and losing access to the boyfriend's credit card may be embarrassing and personally difficult, it is not, as a matter of law, the type of conduct that can be considered "utterly intolerable in a civilized community." *See, e.g., Warner v. Buck Creek Nursery, Inc.,* 149 F. Supp. 2d 246, 252 (W.D. Va. 2001).

Ms. Mack also failed to plead that she suffered severe symptoms, which is another necessary element to state a claim for intentional infliction of emotional distress. Liability for intentional infliction of emotional distress arises only where the distress inflicted is "so severe

20

that no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27. In *Russo*, the plaintiff claimed severe distress, saying "she was nervous, could not sleep, experienced stress and its physical symptoms, withdrew from activities, and was unable to concentrate at work." *Id.* The Virginia Supreme Court held that there was not severe distress because there was no claim that plaintiff "had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital...." *Id. See also Harris v. Americredit Fin. Servs.*, 2005 U.S. Dist. LEXIS 44339, at *9-10 (W.D. Va. 2005) (granting defendant's motion to dismiss claim of intentional infliction of emotional distress where nightmares, loss of self-esteem, depression, and nightly episodes of crying were not so severe that no one could be expected to endure them); *Glover v. Oppleman*, 178 F. Supp. 2d 622, 643 (W.D. Va. 2001) (holding sleeplessness, fatigue, anxiety, loss of enjoyment not severe enough to support plaintiff's claim for intentional infliction of emotional distress).

The hardship arising from the termination of a romantic relationship – as alleged by Ms. Mack – does not constitute an actionable claim of severe distress. *See Martin v. Elliotte*, 1998 WL 972222, at *8 (dismissing claim for intentional infliction of emotional distress where plaintiff's wife had an affair with plaintiff's best friend in plaintiff's basement, which affair was videotaped and viewed by plaintiff, because "[i]t is common for individuals going through a divorce to experience a range of emotions and physical changes associated with the collapse of their family," and plaintiff had "not introduced any evidence to show that his stress is more severe than that suffered by the numerous individuals who are also [going] through a divorce.").

Here, Ms. Mack has not alleged that she suffered any symptoms. Ms. Mack's only allegation is a legal conclusion that she suffered "severe emotional distress." Mack Complaint

21

¶ 4.21. Such conclusory allegations are patently insufficient to meet the standard under Virginia law for infliction of emotional distress. *Russo,* 241 Va. at 28 (plaintiff alleged that she suffered "severe emotional distress" and the court held that it was "not bound by such conclusory allegations when the issue involves ... a mixed question of law and fact."); *Villnow v. DeAngelis*, 55 Va. Cir. 324, 328 (2001) (conclusory allegations that plaintiff suffered severe mental, emotional, and physical trauma were not sufficient to state a claim).

Ms. Mack's claim for negligent infliction of emotional distress is equally without basis. Virginia law requires that where conduct is "merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone," but rather the party asserting the claim must allege **physical injury**. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136, 523 S.E.2d 826, 833-34 (2000). Alleged physical injuries must be more than typical symptoms of emotional disturbance. *Goff v. Jones,* 47 F. Supp. 2d 692, 696 (E.D. Va. 1999). Ms. Mack does not allege any physical injury, so her claim for negligent infliction of emotional distress cannot be sustained.

### F.      Virginia Does Not Recognize a Cause of Action for Promissory Estoppel.

The Virginia Supreme Court has conclusively determined that "promissory estoppel is not a cognizable cause of action in Virginia." *Mongold v. Woods,* 278 Va. 196, 202-03, 677 S.E.2d 288 (2009) (citing *W.J. Schafer Assocs. v. Cordant, Inc.,* 254 Va. 514, 521, 493 S.E.2d 512 (1997); *Va. School of the Arts v. Eichelbaum,* 254 Va. 373, 377, 493 S.E.2d 510 (1997); *Ward's Equip., Inc. v. New Holland N. Am., Inc.,* 254 Va. 379, 385, 493 S.E.2d 516 ( 1997)). Ms. Mack's claim for promissory estoppel – Count Seven of her complaint – has no basis in law, and judgment on the pleadings should be granted in favor of Mr. Greenawalt.

Dated: April 29, 2010

Respectfully submitted,

s/ William B. Poff
William B. Poff, VA Bar # 03477
WOODS ROGERS PLC
10 South Jefferson Street
Suite 1400
Roanoke, VA 24011
Telephone: (540) 983-7600
Fax: (540) 983-7711
poff@woodsrogers.com
conte@woodsrogers.com

Stellman Keehnel, Pro Hac Vice
Tyson K. Harper, Pro Hac Vice
DLA PIPER LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104
Telephone: 206.839.4800
Fax: 206.839.4800
Stellman.keehnel@dlapiper.com
Tyson.harper@dlapiper.com

*Attorneys for Kent Greenawalt*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2010, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Nancy S. Mack
> Defendant, Pro Se
> 26804 262[nd] Ave SE
> Ravensdale, WA 98051

_____/s/ William B. Poff

Counsel for Plaintiff
